**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| WRIGHT MEDICAL TECHNOLOGY, INC., | ) C/A NO.: 19-av-99999 |
| | ) [D. Colorado Case No. 18-cv-00691-PAB] |
| | ) |
| Plaintiff, | ) **PLAINTIFF'S MEMORANDUM IN** |
| | ) **SUPPORT OF ITS MOTION FOR** |
| vs. | ) **PROTECTIVE ORDER AND TO** |
| | ) **QUASH DEFENDANT'S SUBPOENA** |
| PARAGON 28, INC., | ) **DIRECTED TO NON-PARTY** |
| | ) **CAROLINA BONE AND JOINT** |
| Defendant. | ) **SURGERY, LLC** |
| _____ | ) |

i

## <u>TABLE OF AUTHORITIES</u>

**Federal Cases**

*American Standard, Inc. v. Pfizer, Inc.*, 828 F.2d 734 (Fed. Cir. 1987)..........................................8

*Auto-Owners Ins. v. Southeast Floating Docks*, Inc., 231 F.R.D. 426, 429
    (M.D. Fla. 2005) ....................................................................................................................7

*Cipollone v. Liggett Group, Inc.*, 785 F.2d. 1108 (3rd Cir. 1986)................................................11

*Compaq Computer Corp. v. Packard Bell Elecs.*, 163 F.R.D. 329 (N.D.Cal. 1995)....................12

*Deford v. Schmid Prods. Co.*, 120 F.R.D. 648 (D.Md. 1987)........................................................11

*Empire of Carolina, Inc. v. Mackle*, 108 F.R.D. 323 (D.C. Fla. 1985) ........................................12

*Gonzales v. Google, Inc.*, 234 F.R.D. 674 (N.D.Cal. 2006) ........................................................12

*Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125 (10th Cir. 2003) ...........................................12-13

*Haworth, Inc. v. Herman Miller, Inc.*, 1992 U.S. Dist. LEXIS 13670 (N.D. Ill.
    1992), affirmed, 998 F.2d 975 (Fed. Cir. 1993) ....................................................................8

*Pansy v. Borough of Stroudsburg*, 23 F.3d 772 (3rd Cir. 1994)..............................................6, 12

*Rice v. U.S.*, 164 F.R.D. 556 (N.D. Okla. 1995).............................................................................8

*Singletary v. Sterling Transp. Co.*, 289 F.R.D. 237, 239 (E.D. Va. 2012) .....................................7

*Smith v. Midland Brake, Inc.*, 162 F.R.D. 683 (D. Kan. 1995) ......................................................6

*Uniroyal Chem. Co. Inc. v. Syngenta Crop Prot.*, 224 F.R.D. 53 (D.Conn. 2004) ......................12

*United States v. Idema*, 118 Fed.Appx. 740 (4th Cir. 2005)...........................................................7

*Vesta Corset Co. v. Carmen Foundations, Inc.*, 1999 U.S. Dist. LEXIS 124, 1999
    WL 13257 (S.D.N.Y. 1999)..................................................................................................12

**State Cases**

*Colorado Supply Co. v. Stewart*, 797 P.2d 1303 (Colo. Ct. App. 1990) ..................................12-13

**Federal Statutes**

HIPAA ...............................................................................................................................................1

**State Statutes**

Colo. Rev. Stat. Ann. § 7-74-102(4) .............................................................................12

Colorado Uniform Trade Secret Act ............................................................................12

**Rules**

FED. R. CIV. P. 26 ............................................................................................... 7-8, 14

FED. R. CIV. P. 26(b)(1) .................................................................................... Passim

FED. R. CIV. P. 26(b)(2)(C) ....................................................................................6

FED. R. CIV. P. 26(c) ..............................................................................................6

FED. R. CIV. P. 26(c)(1)(A) and (G) .......................................................................6

FED. R. CIV. P. 26(c)(1)(G) ..................................................................................11

FED. R. CIV. P. 45 ............................................................................................. 5, 7-8

FED. R. CIV. P. 45 and 26 .................................................................................. Passim

FED. R. CIV. P. 45(d)(1) ........................................................................................15

Fed. R. Civ. P. 45(d)(1) and (d)(3) ..........................................................................5

FED. R. CIV. P. 45(d)(3)(B)(i) ...........................................................................5, 11

FED. R. CIV. P. 45(d)(3)(C)(i) ...........................................................................2, 14

**Other Authorities**

*Wright Medical Technology, Inc. v. Paragon 28, Inc.*, Case No. 18-cv-00691-
    PAB................................................................................................................ 1-2

Plaintiff Wright Medical Technology, Inc. ("Wright") hereby respectfully submits its Motion to Quash or for a Protective Order regarding the subpoenas issued by Paragon 28, Inc. ("Paragon") to non-party Carolina Bone and Joint Surgery LLC ("CBJS") pursuant to Rule 26(c)(1) and Rule 45(c)(3) of the Federal Rules of Civil Procedure.  As grounds for this motion, Wright states as follows:

## I.    <u>INTRODUCTION</u>

There is good cause to quash or issue a protective order to limit the subpoenas issued by Defendant Paragon to CBJS.  To begin with, the broad swath of documents and testimony sought by Paragon are not remotely relevant to any claims or defenses in the underlying case. CBJS is a non-party to the underlying patent infringement and trade secret litigation.  It has no interest in the outcome of that litigation and has not been accused, directly or indirectly, of having any involvement in the wrongdoing alleged in that case.  Wright has not accused non-party CBJS of any improper conduct, nor has Paragon lodged a defense or outlined any facts in the underlying litigation that would render the vast discovery sought from CBJS relevant.

Separate and apart from the relevance concerns, Paragon's failure to first seek this information from *Wright* – a party in the underlying litigation – alone warrants quashing Paragon's subpoenas.  Rather than pursue the discovery through the discovery mechanisms already in place in the underlying case, Paragon willfully seeks to impose the associated undue burden of collecting, reviewing, and producing any responsive information (and logging any potentially responsive-but-privileged documents) on CBJS.  On top of that, Paragon seeks a deposition of a CBJS witness on all topics.  And to be sure, the burden on CBJS of producing documents and providing deposition testimony in response to Paragon's overly broad subpoenas will be significant.  The communications Paragon seeks span across *ten years,* potentially impacting countless custodians, and will likely contain patient-related HIPAA protected information that will

require extensive review and redaction before it could be produced.  Considering the broad scope of the requests, the resulting burden of compliance on CBJS, and the lack of relevance of the information sought, Paragon's requests are not proportional to the needs of the case.  In these circumstances, "the burden or expense of the proposed discovery outweighs its likely benefit." Rule 26(b)(1).

Furthermore, the requested documents and deposition testimony all seek financial and pricing information Wright maintains as trade secret.  Given the lack of relevance, or at best minimal relevance, of the requested information, Paragon cannot meet its burden under Rules 26 and 45 to show a "substantial need for the testimony or material that cannot be otherwise met without under hardship." FED. R. CIV. P. 45(d)(3)(C)(i).  And Wright is entitled to prevent the disclosure of its trade secret pricing information to one of Wright's fiercest competitors, who already stands accused of misappropriating Wright's trade secrets and confidential information.

With discovery closing at the end of October, Paragon's last minute scattershot subpoenas are more indicative of Paragon's previously stated intent to drive up the cost of litigation and to smear Wright's reputation with its existing customers, than a "genuine" attempt to obtain information that it could have requested directly from Wright.  Accordingly, Wright respectfully requests that the Court grant its Motion to Quash or its Motion for Protective Order from Paragon's non-party subpoena to CBJS which seeks irrelevant confidential and trade secret information of Wright.

## II.    FACTUAL BACKGROUND

### A.    Background of the Underlying District of Colorado Case

This Motion arises in connection with *Wright Medical Technology, Inc. v. Paragon 28, Inc.*, Case No. 18-cv-00691-PAB, currently pending in the United States District Court for the

District of Colorado.  The facts that gave rise to Wright's underlying action are set forth in detail in Wright's Third Amended Complaint ("TAC"), Dkt. No. 89, filed September 28, 2018.  Briefly, they are as follows:

The case is a civil action seeking damages and other relief for infringement of ten patents[1] (collectively, the "Patents-in-Suit).  TAC at ¶ 17.  Plaintiff Wright designs, manufactures, and sells a variety of orthopedic products for in upper extremities, lower extremities and biologics medical device areas.  At issue in the underlying action are orthopedic plates and instruments for use in bone repair, including for bone repair in the foot and ankle.  TAC at ¶ 9.  Defendant Paragon was founded by four former Wright employees ("Paragon Founders") who, in order to accelerate the launch of a Paragon product line, turned to copying the orthopedic plating technologies they had learned from Wright. TAC at ¶ 49.  Not only do many of Paragon's products incorporate Wright's technologies, they also infringe numerous claims of Wright's patents.  As a result, Wright was forced to bring the underlying lawsuit to defend its intellectual property rights against five infringing Paragon orthopedic plate product families and a related instruments.

In the underlying case, Wright also seeks monetary damages and other relief resulting from a pervasive pattern of trade secret misappropriation, unfair competition, and tortious interference by the Paragon Founders.  The evidence adduced to date – including *hundreds* of Wright documents in Paragon's possession – reveal Paragon's systematic misappropriation and use of Wright's trade secrets.  Moreover, the Paragon Founders had intimate knowledge of Wright's product lines, business plans/roadmaps, customers, sales, pricing, and other highly sensitive

---

[1] The ten patents that Paragon infringes are U.S. Patent Nos. 7,771,457 ("the '457 Patent"); 8,100,954 ("the '954 Patent"); 8,118,846 ("the '846 Patent"); 8,118,848 ("the '848 Patent"); 9,144,443 ("the '443 Patent"); 9,259,251 ("the '251 Patent"); 9,259,252 ("the '252 Patent"); 9,259,253 ("the '253 Patent"); 9,545,278 ("the '278 Patent"); and 9,078,710 ("the '710 Patent").

technical and business information.  TAC at ¶¶ 43, 49.  The Paragon Founders used the knowledge

gained at Wright to induce a number of Wright's employees and consultants to switch to Paragon.

TAC at ¶¶ 43-47, 49-50, 62-66.  The former employees then acted without authorization to further

misappropriate and convert Wright's proprietary, confidential, and/or trade secret information for

the benefit and financial gain of their new employer, Paragon. TAC at ¶ 48.

### B.    Carolina Bone and Joint Surgery, LLC

CBJS is an outpatient orthopedic surgery center with over 25 local participating physicians

and surgeons that specializes in hand surgery, knee replacement, hip replacement and capable of

providing needs for nearly every bone and joint surgical needs.  Thus, considering that the scope

of Paragon's subpoena is not limited to any particular type of medical device, the number of

patients treated every year at CBJS that could have responsive information may likely cover the

majority of patients treated.

### C.    The Subpoenas in Dispute

On September 30, 2019, Paragon issued two subpoenas to non-party CBJS requesting

production of documents and a deposition on the following enumerated topics[2]:

> **REQUEST FOR PRODUCTION NO. 1**:  Any communications or
> documents, including emails and attachments, between You and Wright
> concerning or related to the pricing of any medical device, including list
> pricing, customer pricing, contract pricing, construct pricing, and
> discount pricing, from August 2010 to present.
>
> **REQUEST FOR PRODUCTION NO. 2**:  Any communications or
> documents, including emails and attachments, between You and any
> third party concerning or related to the pricing of any medical device

---

[2] Paragon's subpoenas to CBJS are attached as **Exhibit 1** and **Exhibit 2**.  Duplicative subpoenas
were served by Paragon to four other Wright customers including: Confluence Health (Wenatchee,
WA), Carolina Bone and Joint Surgery, LLC (Myrtle Beach, SC), St. Vincent's Birmingham
(Birmingham, AL) and Ascension Health (St. Louis MO).

belonging to Wright, including list pricing, customer pricing, contract pricing, construct pricing, and discount pricing, from August 2010 to present.

**REQUEST FOR PRODUCTION NO. 3**:  Any communications or documents, including emails and attachments, between You and Wright concerning or related to Paragon, from August 2010 to present.

**DEPOSITION TOPIC NO. 1:**  Any communications or documents, including emails, email attachments, telephonic communications, and in-person communications, between You and Wright concerning or related to the pricing of any medical device belonging to Wright or another third party, including list pricing, customer pricing, contract pricing, construct pricing, and discount pricing, from August 2010 to present.

**DEPOSITION TOPIC NO. 2:**  Any communications or documents, including emails, email attachments, telephonic communications, and in-person communications, between You and any third party concerning or related to the pricing of any medical device belonging to Wright or another third party, including list pricing, customer pricing, contract pricing, construct pricing, and discount pricing, from August 2010 to present.

**DEPOSITION TOPIC NO. 3:**  Any communications or documents, including emails, email attachments, telephonic communications, and in-person communications, between You and Wright concerning or related to Paragon 28, Inc., from August 2010 to present.

## III.   LEGAL STANDARD

### A.   Fed. Rules Civ. P. 45 and 26 Limit the Scope of Third-Party Discovery

Under Rule 45, "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena," and a court "must quash or modify a subpoena that[] . . . requires disclosure of privileged or other protected matter . . . or subjects a person to undue burden." Fed. R. Civ. P. 45(d)(1) and (d)(3).  Similarly, a court may quash a subpoena that "requires disclosing a trade secret or other confidential research, development, or commercial information[]." FED. R. CIV. P. 45(d)(3)(B)(i).

When determining whether a subpoena imposes an undue burden, courts consider the relevance of the documents sought, the necessity of the documents sought, the breadth of the request and expense and inconvenience.  Fed. R. Civ. P. 26(b)(1).  Thus, to obtain discovery from nonparties, a party must establish that its need for discovery outweighs the nonparty's interest in nondisclosure. *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 787 (3rd Cir. 1994).

With regard to a motion for protective order, Rule 26(c) permits the Court to issue a protective order upon a finding of good cause to protect a party or person against "annoyance, embarrassment, oppression, or undue burden or expense, including. . . forbidding the disclosure or discovery… [or] requiring that a trade secret or… commercial information not be revealed or be revealed only in a specified way."  FED. R. CIV. P. 26(c)(1)(A) and (G).  Furthermore, the court must limit the extent of discovery if it determines that: (1) "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive", (2) "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action", or (3) "the proposed discovery is outside the scope permitted by Rule 26(b)(1)."  FED. R. CIV. P. 26(b)(2)(C).

### B.    Wright Has Standing to Bring This Motion to Quash.

Wright has standing under Rules 45 and 26 to challenge the subpoenas because it is an "affected" party impacted by the subpoena. *See Smith v. Midland Brake, Inc*., 162 F.R.D. 683 (D. Kan. 1995) (a party to a communication of confidential and trade secret information has standing and a vested interest in moving to quash the subpoena to protect its information). Here, the communications requested by Paragon of non-party CBJS involve Wright and its confidential and trade secret pricing information and therefore Wright is an "affected" party impacted by the subpoena.

Wright may also challenge Paragon's subpoena under Rule 26 standards "regardless of whether [it has] standing to bring a motion to quash under Rule 45." *United States v. Idema*, 118 Fed.Appx. 740, 744 (4th Cir. 2005) (quoting *Singletary v. Sterling Transp. Co.*, 289 F.R.D. 237, 239 (E.D. Va. 2012). Paragon's request for documents and testimony fall outside of the scope of discovery outlined in Rule 26, thus Wright also brings this Motion for Protective Order to address the undue burden of this discovery request for irrelevant information. *See Auto-Owners Ins. v. Southeast Floating Docks*, Inc. 231 F.R.D. 426, 429 (M.D. Fla. 2005) (party has standing for motion for protective order if nonparty subpoena seek irrelevant information).

## IV.    ARGUMENT

### A.    Paragon's Subpoenas Should Be Quashed, or a Protective Order Should Issue, Because Paragon Did Not Seek This Information From Wright

Paragon's subpoenas to CBJS should be quashed or a protective order should be issued because Paragon failed to even seek the requested information from Wright in the underlying action despite ample opportunity to do so. Paragon seeks documents and testimony concerning communications between CBJS and Wright – plaintiff in the underlying action – in two of the three subpoenaed topics (*i.e.,* document request nos. 1 and 3, and deposition topic nos. 1 and 3). The Scheduling Order entered by the Colorado court, however, includes specific guidelines governing discovery of email communications – the "ESI protocol" – which set forth the number of custodians and search terms a party can be required to search. Those discovery procedures were fully available for Paragon to follow without imposing any burden on CBJS. Thus, not only is Paragon seeking documents and testimony untied to any claim or defense in the underlying action, as discussed further below, Paragon has unnecessarily drawn an uninvolved non-party into this

litigation without seeking the information in the underlying action – its subpoena should be quashed for this reason alone.  *See American Standard, Inc. v. Pfizer, Inc*., 828 F.2d 734, 743 (Fed. Cir. 1987) (holding that nonparty witness should not be burdened with producing documents sought by a party in an underlying action unless the party is unable to obtain that information from its adversary); *Haworth, Inc. v. Herman Miller, Inc*., 1992 U.S. Dist. LEXIS 13670 (N.D. Ill. 1992) (quashing subpoena attempting to obtain a settlement agreement from a nonparty without first attempting to obtain it from the opposing party), affirmed, 998 F.2d 975, 978 (Fed. Cir. 1993).

### B.    Paragon's Subpoenas Seek Irrelevant Documents and Testimony

In an attempt to cast as large of a net as possible, Paragon's subpoenas propound topics that land far outside the bounds of relevancy and thus quashing or at least the issuance of a protective order is appropriate to protect Wright and non-party CBJS from undue burden.  Rule 45 subpoenas constitute discovery within the meaning of the Federal Rules of Civil Procedure (*Rice v. U.S*., 164 F.R.D. 556, 556–57 (N.D. Okla. 1995)) and, thus, Rule 26(b)(1) defines the scope of permissible discovery.  Fed. R. Civ. P. 26(b)(1).  Rule 26 requires the proponent to demonstrate that the evidence sought is relevant to any party's claim or defense, and proportional to the needs of the case.  *Id*.  Here, the information that Paragon seeks from CBJS meets neither of these requirements.

### 1.    Paragon's Requests Are Not Relevant to Any Claims or Defenses

Paragon subpoena topics 1 and 2 (for documents and testimony) unabashedly seek irrelevant documents and testimony concerning *any* communications between CBJS and Wright or between CBJS and *any other unnamed third party* regarding Wright's various pricing structures, yet neither Wright nor Paragon have claimed or asserted any defenses that would implicate CBJS's involvement in the underlying action.  Wright's Complaint in the underlying litigation details the Paragon Founders' systematic theft of Wright's confidential and trade secret information which

has been confirmed through extensive discovery of computers and files in the Paragon's Founders' possession. Wright does not, and has not, allege(d) that the misappropriated information was derived or received by Paragon through a hospital's disclosure. And Paragon has not produced any communications between itself and CBJS in the underlying litigation. Simply put, such a narrative is void in the underlying litigation. Accordingly, the non-party subpoenas to CBJS seeking communications with Wright and other non-parties, do not fall into the scope of discovery permitted by Rule 26(b)(1) and therefore is subject to limitation.

### 2.    Paragon's Requests are Not Relevant Because They are Unrestricted and Vague

Paragon's subpoena topics are so vague and unrestricted that they necessarily seek irrelevant information.  For example, Paragon subpoena document request no. 3 seeks "[a]ny communications or documents, including emails and attachments, between You and Wright concerning or related to Paragon, from August 2010 to present."  Similarly, deposition topic no. 3 seeks "[a]ny communications or documents, including emails, email attachments, telephonic communications, and in-person communications, between You and Wright concerning or related to Paragon 28, Inc., from August 2010 to present." Paragon's broad and limitless requests are unmoored from any issue in the underlying litigation.  Paragon has asserted no claims against Wright.  And it is entirely unclear how any communications between CBJS and Wright which broadly concern Paragon – to the extent they any even exist – could have any relevance to Paragon's defense to Wright's trade secret allegations.

Similarly, Paragon subpoena document request nos. 1 and 2 seek "[a]ny communications or documents… between [CBJS] and any third party [including Wright] concerning or related to the pricing of *any medical device belonging to Wright*."  Putting aside the breadth of communications sought, and the fact that Paragon has no claims against Wright, even Wright's claims against Paragon do not encompass "all" medical devices Wright sells. Instead, Wright's Colorado claims against Paragon are limited to lower extremities (foot and ankle) products.  There can be no possible relevance to communications involving the myriad of other products Wright makes and sells (*e.g.*, hips, knees, shoulders and a host of other medical device products).

And to the extent that Paragon was able to establish any potential minimal relevance for the requested communications, that information can more easily be obtained through the discovery

procedures already in place in the Colorado action between the parties to this litigation, rather than burdening a third-party to search across *ten-years* of communications between an unknown number of potential document custodians to identify some small set of marginally relevant information. In these circumstances, "the burden or expense of the proposed discovery outweighs its likely benefit." Rule 26(b)(1).

### 3. Paragon Failed to Seek Documents and Testimony in the Underlying Action

Perhaps most apparent to the non-relevancy of the documents and testimony sought by Paragon is that they were not requested from Wright during discovery in the underlying action. If in fact the information was of any importance to Paragon's defenses or related to any claims by Wright in the underlying action, Paragon should have requested them from Wright instead of waiting until the end of the discovery period and dragging a non-party into needlessly expending time and resources responding to its subpoenas. The void of such discovery in the underlying action only further confirms that the requested information is not relevant, or of little relevance, to Paragon's defenses nor touch upon any claims by Wright. As detailed above, this alone should result in these requests being quashed or restricted by a protective order.

### C. Paragon's Subpoenas Should be Quashed As They Seek Wright's Trade Secret Information

Both Rule 26 and Rule 45 contain provisions protecting confidential commercial information. Rule 26(c)(1)(G) allows the court, for good cause, to issue an order "requiring that a trade secret or other confidential… commercial information not be revealed or be revealed only in a specified way." The party seeking protection bears the initial burden of establishing both the confidentiality of the material and the harm associated with its disclosure. *Deford v. Schmid Prods. Co.*, 120 F.R.D. 648, 653 (D.Md. 1987) (citing *Cipollone v. Liggett Group, Inc.*, 785 F.2d. 1108, 1121 (3rd Cir. 1986)). Rule 45(d)(3)(B)(i) provides similar protections upon a similar showing of

the confidential nature of the information, and the party's historical efforts to protect it from disclosure.  *See e.g., Gonzales v. Google, Inc.*, 234 F.R.D. 674, 684 (N.D.Cal. 2006); *Compaq Computer Corp. v. Packard Bell Elecs.*, 163 F.R.D. 329, 338 (N.D.Cal. 1995).

Once these elements are shown, the burden shifts to the party seeking disclosure to show that the material is relevant and necessary to its case.  *Empire of Carolina, Inc. v. Mackle*, 108 F.R.D. 323, 326 (D.C. Fla. 1985).  The court "must balance the requesting party's need for information against the injury that might result if uncontrolled disclosure is compelled." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 787 (3rd Cir. 1994); *Gonzales*, 234 F.R.D. at 684; *Compaq Computer Corp.*, 163 F.R.D. at 338.

### 1.    Wright's Pricing Information is Trade Secret

"Pricing and marketing information are widely held to be confidential business information that may be subject to a protective order." *Uniroyal Chem. Co. Inc. v. Syngenta Crop Prot.*, 224 F.R.D. 53, 57 (D.Conn. 2004) (citing *Vesta Corset Co. v. Carmen Foundations, Inc.*, 1999 U.S. Dist. LEXIS 124, 1999 WL 13257, at *2 (S.D.N.Y. 1999)).  The Colorado Uniform Trade Secret Act ("CUTSA") broadly defines "trade secret" as "any scientific or technical information… *confidential business or financial information*. . . which is secret and of value." Colo. Rev. Stat. Ann. § 7-74-102(4) (emphasis added).  The essential test in the jurisdiction of the underlying action for determining whether something is capable of protection as a trade secret was established in *Colorado Supply Co. v. Stewart*, 797 P.2d 1303, 1306 (Colo. Ct. App. 1990), and was utilized by the Tenth Circuit in *Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1129 (10th Cir. 2003).  Factors considered in determining whether a trade secret exists include:

> (1) the extent to which the information is known outside the business; (2) the extent to which it is known to those inside the business, i.e., by the employees; (3) the precautions taken by the holder of the trade secret to guard the secrecy of the information; (4) the savings effected and the value to the holder in having the

> information as against competitors; (5) the amount of effort or money expended in obtaining and developing the information; and (6) the amount of time and expense it would take for others to acquire and duplicate the information.

*Id*. (citing *Colo. Supply*, 797 P.2d at 1306).

As set forth in Wright's Third Amended Complaint in the underlying action, Wright's pricing information is trade secret. TAC at ¶ 14. Wright's pricing information is closely held and only made available to necessary groups of Wright employees who sign agreements protecting the confidentiality of the information. TAC at ¶ 16. While certain departments in Wright may have access to portions of Wright's pricing information, the information is only allowed for those on a "need to know" basis in order to perform their assigned duties. *Id*. Wright has codified its policies and procedures for handling confidential and trade secret information in a series of employee agreements, employee handbooks, and code of ethics. Additionally, access to Wright pricing information is controlled by various physical and electronic security measures at its facilities including password protection, restricted access and dual authentication requirements on computers and other computer systems. *Id*. Wright further protects its pricing information by requiring its surgical consultants, partners and vendors to sign confidentiality and non-disclosure agreements. *Id*. Wright does not share information regarding its pricing information with its competitors such as Paragon.

Wright's pricing information provides it a competitive advantage in the medical device industry and Wright has invested significant time and money in developing this information. TAC at ¶ 15. Disclosing its pricing information would put Wright at risk of losing that competitive edge and allow Paragon an inside look at Wright's analysis of the market, how Wright makes pricing decisions, and Wright's strategies and planning. And while Wright has accused Paragon of misappropriating certain of its pricing information in the Colorado action, that should not provide

Paragon unfettered access to all of Wright's pricing agreements and communications with customers. Rather, a trade secret defendant that stands accused of misappropriation should not be rewarded with carte blanche access to yet additional trade secret pricing information of plaintiff. The Rule 45 and 26 factors protecting against the disclosure of trade secrets must still be met.

### 2.    Paragon Cannot Meet Its Burden to Request Production and Testimony of Wright's Trade Secret Pricing Information

As Wright has clearly demonstrated, the strategic pricing information Paragon seeks from non-party CBJS qualifies as Wright's trade secrets protectable from discovery under the Federal Rules. The burden now shifts to Paragon to demonstrate a "substantial need for the testimony or material that cannot be otherwise met without under hardship." FED. R. CIV. P. 45(d)(3)(C)(i). That it cannot do.

Paragon cannot demonstrate a substantial need for the discovery because, as demonstrated above, the information is not relevant to the underlying action. Paragon's failure to even initiate any discovery regarding pricing communications between CBJS and Wright is enough to justify quashing these non-party subpoenas. Paragon's lack of pursuit only confirms the low relevancy, if any at all, of the information requested.

Similarly, Paragon has failed to tie the relevance of these communications to any claims or defenses in the underlying action. As Rule 26 is clear, the scope of discovery is limited to any non-privileged matter that is relevant to any party's claim or defense. Here, no connection has been made.

Moreover, Paragon's open-ended request seeking *any* communication or documents between CBJS and Wright or *any third party* regarding "pricing" (*e.g.,* requests for production and deposition topic nos. 1 and 2) would encompass reams of information having absolutely no relevance to the underlying litigation. Rule 26 was designed to prevent such swallowing

of limitations on the scope of discovery and to give discovery meaning.  Accordingly, Paragon's failure to request targeted and relevant discovery to non-party CBJS justifies quashing the subpoenas.

**D.**    **Paragon's Subpoenas Harass and Cause Undue Burden on Wright and Non-Party CBJS**

Paragon has threatened on multiple instances to subpoena "every hospital" that Wright does business with in an attempt to unilaterally tell them that they were "forced" to pursue discovery of the hospital because Wright is accusing hospitals of violating their confidentiality agreement with Wright.  This narrative is patently false.  In fact, in a hearing on July 8, 2019, counsel for Wright specifically stated that Wright has not made any allegations that Paragon received Wright information directly from hospitals.[3] A review of Wright's Third Amended Complaint further confirms that no such allegations exist.  Yet, despite Wright's statements in the underlying action, Paragon marched forward with serving the instant subpoenas (as well as mirror-image subpoenas on four other hospitals Wright does business with).  Paragon's action in face of Wright's pleadings, discovery, and representations in court, can only be taken as an attempt to harass and cause undue burden on Wright and its customers in hopes of gaining an unfair tactical advantage in the ongoing litigation.  Paragon should be held responsible in the form of sanctions in accordance with Rule 45(d)(1) for its failure to act in good faith and for its failure to comply with the rules - causing undue burden and expense with these subpoenas.

---

[3] **Exhibit 3**, excerpt from July 8, 2019 Discovery Hearing Transcript, pp. 41-42.

## V.     **<u>CONCLUSION</u>**

For the reasons stated above, Wright respectfully request that this Court grant its Motion to Quash or its Motion for Protective Order preventing the production of documents and the taking of non-party CBJS.

Dated: October 11, 2019                                    Respectfully submitted,

*/s/ John B. McCutcheon, Jr.*
John B. McCutcheon, Jr., Fed ID #2789
JMcCutcheon@thompsonlaw.com
Thompson & Henry, P.A.
1300 Second Avenue, 3rd Floor
Post Office Box 1740
Conway, SC 29526 (29528)
Phone: (843) 248-5741

*Counsel for Plaintiff*
*Wright Medical Technology, Inc.*

## <u>CERTIFICATE OF GOOD FAITH CONFERENCE</u>

I hereby certify that Plaintiff Wright Medical Technology, Inc. has conferred with Paragon 28, Inc., and attempted in good faith to resolve the issues without court intervention, but the parties were unable to come to a resolution.

<u>/s/ John B. McCutcheon, Jr.</u>
John B. McCutcheon, Jr.

## CERTIFICATE OF SERVICE

I certify that the foregoing was served via email this 11th day of October 2019 on the

following counsel of record for Paragon 28, Inc.

Luke Lucien Dauchot
Sharre Lotfollahi
Kirkland & Ellis, LLP-Los Angeles
333 South Hope Street, Suite 2900
Los Angeles, CA 90071
Telephone: 213-680-8400
Facsimile: 213-680-8500
luke.dauchot@kirkland.com
sharre.lotfollahi@kirkland.com

Kristina N. Hendricks
Gregory Polins
Kirkland & Ellis, LLP-Chicago
300 North LaSalle Street
Chicago, IL 60654
Telephone: 312-862-2000
Facsimile: 312-862-2200
Kristina.hendricks@kirkland.com
Greg.polins@kirkland.com

Kathryn A. Reilly
Chuan ("CiCi") Cheng
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202-5647
Telephone: 303.244.1800
Facsimile: 303.244.1879
reilly@wtotrial.com
cheng@wtotrial.com

**Attorneys for Defendant**
**Paragon 28, Inc.**

*/s/ John B. McCutcheon, Jr.*
John B. McCutcheon, Jr.